Mark E. Ellis – 127159
Lawrence K. Iglesias – 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| STEVEN R. OLIVER,<br><br>          Plaintiff,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>          Defendant. | Case No.: 2:16-cv-02413-TLN-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RASH CURTIS & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FRCP (c)]**<br><br>**DATE:**      **May 3, 2018**<br>**TIME:**      **2:00 p.m.**<br>**DEPT:**      **2, 15th Floor**<br>**HONORABLE TROY L. NUNLEY** |

# TABLE OF CONTENTS

                                                                                                          PAGE

I.    INTRODUCTION ........................................................................................................... 1

      A.    Defendant Is Entitled to Summary Judgment As To Plaintiff's TCPA Cause
            Of Action Because Defendant Did Not Use An "ATDS" Dialing System ..................... 1

      B.    Defendant Is Entitled To Summary Judgment As To Plaintiff's TCPA Cause
            Of Action Because Defendant Called Plaintiff's Cell Phone With Prior
            Express Consent Obtained From Its Creditor-Client To Whom Plaintiff,
            And His Agent, Had Provided Consent ......................................................................... 2

      C.    Rash Curtis Is Entitled To Summary Judgment As To Plaintiff's FDCPA
            Cause Of Action As A Matter Of Law .......................................................................... 3

      D.    Rash Curtis Is Entitled To Summary Judgment As To Plaintiff's Rosenthal
            Act Cause Of Action As A Matter Of Law .................................................................... 5

II.   FACTUAL BACKGROUND .......................................................................................... 6

III.  PLAINTIFF'S CLAIMS ................................................................................................. 8

      A.    The Telephone Consumer Protection Act Claims – 47 U.S.C. § 227 ........................... 8

      B.    The Fair Debt Collection Practice Act Claims, 15 U.S.C. §§ 1692, *et seq.* ................. 9

      C.    The Rosenthal Fair Debt Collection Practice Act Claims, Civ. Code §§ 1788, et seq. .... 9

IV.   ANALYSIS ................................................................................................................... 10

      A.    Plaintiff's TCPA Claim Fails Because Rash Curtis Did Not Use An "ATDS" .............. 10

      B.    Plaintiff's TCPA Claim Is Barred By The Affirmative Defense Of
            "Prior Express Consent" ............................................................................................. 10

            1.    Rash Curtis Had Plaintiff's "Prior Express Consent" At All Times
                  Either Directly or Vicariously ............................................................................ 11

            2.    Rash Curtis Acted with a Reasonable, Good Faith Belief that it had
                  Prior Express Consent to Call Plaintiff ............................................................... 12

            3.    Plaintiff Did Not Effectively Revoke Consent To Be Called ............................... 13

            4.    None Of The Calls Were Made "Knowingly Or Willfully" Without Consent ......... 13

      C.    Defendant Is Entitled To Summary Judgment On Plaintiff's FDCPA And
            Rosenthal Act Claims ................................................................................................. 14

            1.    Plaintiff Cannot Establish a Violation Under 15 U.S.C. § 1692d(5) ..................... 14

            2.    Plaintiff Lacks Standing To Assert A Rosenthal Act Claim Under
                  Cal. Civ. Code §§ 1788.11(d)-(e) ...................................................................... 17

            3.    Plaintiff Cannot Establish A Separate Violation Under Cal. Civ. Code
                  §§ 1788.11(d)-(e) .............................................................................................. 17

            4.    Plaintiff's Rosenthal Act Claim Under Cal. Civ. Code § 1788.17 Fails
                  As A Matter Of Law Because Rash Curtis Did Not Violate The FDCPA ............... 18

- i -

3.     Plaintiff Cannot Demonstrate That He Suffered Legally Cognizable
       Actual Injuries In The Form Of Emotional Distress, And Defendant
       Seeks Partial Summary Judgment As A Matter Of Law Under The FDCPA
       And Rosenthal Act On His Actual Damages Claim .......................................................18

V.     CONCLUSION .........................................................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RASH CURTIS & ASSOCIATES' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITES

PAGE

## Cases

*ACA Int'l v. Fed. Commc'ns Comm'n*, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) ........1, 2, 8, 10, 12

*Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492 (D. Md. 2004) ...........................14

*Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218 (E.D. Cal. 2010) .......................4, 5, 15, 16, 17

*Baird v. Sabre, Inc.*, 995 F.Supp.2d 1100 (C.D. Cal. 2014) ................................................................2

*Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338 (6th Cir. 2016) ......................................................8

*Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383 (D. Del. 1991) ............................................4, 5, 19

*Bey v. Daimler Chrysler Servs., LLC*, 2006 WL 361385 (D.N.J. Feb. 15, 2006)................................16

*Bieber v. Assoc. Coll. Svcs., Inc.*, 631 F.Supp. 1410 (D. Kan. 1986) ................................................19

*Bundren v. Superior Court*, 145 Cal.App.3d 784 (1983) ...................................................................19

*Carmen v. CBE Group*, 782 F.Supp.2d 1223 (D. Kan. 2011) ...........................................................15

*Celotex Corp. v. Catrett*, 477 S.Ct. 2548 (1986) .............................................................................11

*Chavious v. The CBE Group*, 2012 WL 113509 (E.D. NY 1/12/2012).............................................15

*Christy v. EOS CCA*, 905 F.Supp.2d 648 (E.D. Pa. 2012).........................................................18, 19

*Chyba v. First Fin. Asset Mgmt.*, 2014 WL 1744136 (S.D. Cal. 2014).............................................12

*Costa v. National Action Financial Services*, 634 F.Supp.2d 1069 (E.D. Cal. 2008) .................5, 11, 19

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ..........................................................13

*Girard v. Ball*, 125 Cal.App.3d 772 (1981) ......................................................................................5

*Gouskos v. Aptos Village Garrage, Inc.*, 94 Cal.App.4th 754 (2001) ..........................................5, 17

*Hinderstein v. Advanced Call Str. Techs.*, 2017 WL 751420 (C.D. Cal. 2017) .............................15, 16

*Hudson v. Sharp Healthcare*, 2014 WL 2892290 (S.D. Cal. 2014) ..............................................2, 8, 9

*In re Runyan*, 530 B.R. 801 (Bankr. M.D. Fla. 2015) ......................................................................13

*Jiminez v. Accounts Receivable Mgmt.*, 2010 WL 5829206 (C.D. Cal. 2010) .......................4, 5, 15, 17

*Jones v. Rash Curtis & Associates*, 2011 WL 2050195 (N.D. Cal. 2011)....................4, 5, 11, 15, 18

*Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996).................................................................11

*Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323 (C.D. Cal. 2010).............................................17

*Lynch v. Nelson, Watson & Assoc., LLC*, 2011 WL 2472588 (D. Kan. 6/11/11)................................15

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014).............................3, 9, 12

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) .....................................2, 10

*Ross v. Creel*, 100 Cal.App.4th 736 (2002) ................................................................................5, 19

*Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009) ............................................14, 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RASH CURTIS & ASSOCIATES' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

*Springer v. Fair Isaac Corp.*, 2015 WL 7188234 (E.D. Cal. 2015) ................................12

*Symonds v. Mercury Savings and Loan Assn.*, 225 Cal.App.3d 1458 (1990) ...........................19

*Thomas v. LDG Financial Servs., Inc.*, 463 F.Supp.2d 1370 (N.D. Ga. 2006) ......................19

*Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301 (M.D. Fla. 2010) ...............4, 14, 15, 17

*Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135 (D. Kan. 2004) ..........................16

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) .............2, 8, 9, 13

*VanHorn v. Genpact Servs.*, 2011 WL 4565477 (W.D. Mo. 2011)..............................16, 19

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002).............................11

*Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010).................15

*Warnick v. Dish Network LLC*, 2014 WL 12537066  (D. Colo. Sept. 30, 2014)...................13

*Wright v. C.B. of Ga., Inc.,* 548. F.Supp. 591 (N.D. Ga. 1982) ...............................19

### Statutes

47 U.S.C. § 227(b)(1)(A)(iii) .........................................................8, 10

California Civil Code § 1788.17 ...........................................................18

California Civil Code § 1788.2(e)-(f) .........................................................5

### Other Authorities

*In re Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991*, 23 FCC Rcd. 559, 564-5, ¶ 9 (Jan. 4, 2008) ...........................2

### Rules

Federal Rules of Civil Procedure 56(c)...................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RASH CURTIS & ASSOCIATES' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff STEVEN R. OLIVER has filed this action against Defendant RASH CURTIS & ASSOCIATES, a debt collector, on October 10, 2016, alleging (1) both negligent and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), (2) violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and (3) violations of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.* ("Rosenthal Act"), particularly §1788.11(d)-(e) and §1788.17.  (**Exhibit 1**, Plaintiff's Complaint, ¶¶ 22-23, 29-34, 31-32, 37-38; Undisputed Fact "SSUF" No. 1.)  Although Mr. Oliver's complaint alleges a violation of the FDCPA, it does not specify which particular section of the FDCPA Rash Curtis is alleged to have violated.  (*Id.*, Count II, ¶¶ 29-34; SSUF 2.)  Mr. Oliver prays for awards of statutory damages, actual damages, attorneys' fees, punitive damages, and court costs.  (*Id.* at pp. 7-8.)

Rash Curtis filed its answer on November 29, 2016, in which it asserted several affirmative defenses, including (1) that Mr. Oliver's complaint fails to state facts sufficient to constitute a cause of action, (2) that Rash Curtis acted reasonably and in good faith, (3) that Rash Curtis has no TCPA liability because Rash Curtis had the "prior express consent" of Mr. Oliver, and (4) that Rash Curtis did not use an "ATDS" as defined by the TCPA. (**Exhibit 2**, Defendant's Answer pp. 4-5; SSUF 3.)

Rash Curtis now brings this motion pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment or partial summary judgment as to each individual cause of action.  As shown below, none of Mr. Oliver's claims in the complaint have merit.  There is no triable, genuine issue of material fact for a jury.  Rash Curtis is entitled to summary judgment or partial summary judgment as a matter of law.

### A.     Defendant Is Entitled to Summary Judgment As To Plaintiff's TCPA Cause Of Action Because Defendant Did Not Use An "ATDS" Dialing System

Rash Curtis submits that Mr. Oliver's TCPA claim is not actionable, and that Rash Curtis is entitled to summary judgment on Mr. Oliver's TCPA cause of action.  Fed. R. Civ. Proc. 56(c).  As a preliminary matter, the recent case of *ACA Int'l v. Fed. Commc'ns Comm'n,* 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) vacated the FCC's previous order which had found that a predictive dialing telephone system is an "ATDS" within the meaning of the TCPA.  The D.C. Circuit instead ruled that

- 1 -

an "ATDS" must have the ability to generate (that is, "create") random or sequential numbers and dial those numbers. *Id.* at *11-*12.

The dialers used by Rash Curtis to make the calls in question had no present ability to generate (that is, "create") random or sequential numbers, but instead could only load numbers off a specific list of debtors.  (Declaration of Robert Keith ("Keith Decl.") ¶ 20; SSUF 4.)  Because the use of an "ATDS" is an element of a *prima facie* TCPA violation, and the dialing technology used by Rash Curtis here is not an "ATDS," Mr. Oliver's TCPA claim fails to state facts which constitute a cause of action. *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012).

**B.     Defendant Is Entitled To Summary Judgment As To Plaintiff's TCPA Cause Of Action Because Defendant Called Plaintiff's Cell Phone With Prior Express Consent Obtained From Its Creditor-Client To Whom Plaintiff, And His Agent, Had Provided Consent**

The provision of a cell phone number evinces "prior express consent" to be called at that number so provided, and this is a "complete defense" to a TCPA claim. *Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037, 1044 (9th Cir. 2017); *Hudson v. Sharp Healthcare*, 2014 WL 2892290, at *3 (S.D. Cal. 2014) (the TCPA expressly exempts from liability a caller who has consent to call the cellular telephone number); *Baird v. Sabre, Inc.,* 995 F.Supp.2d 1100, 1106-7 (C.D. Cal. 2014), *aff'd* 636 Fed.Appx. 715 (9th Cir. 2016) (a person who knowingly releases her number has consented to be contacted at that number).

A debt collector, such as Rash Curtis, who calls on behalf of the creditor to whom consent has been provided, also operates within that consent. *Hudson, supra*, 2014 WL 2892290, at *3 ("prior express consent" is granted to the collector when the wireless number is provided to the creditor during the transaction that resulted in the debt owed); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564-5, ¶ 9 (Jan. 4, 2008) (the "2008 TCPA Order") (provision of a cell phone number to a creditor reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number, and calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call).

Here, Mr. Oliver's complaint alleges that Rash Curtis called his cellular telephone number ending in 0888 multiple times in an attempt to collect a debt from his grandmother, Karen Klein.

- 2 -

1  (**Exhibit 1**, ¶ 14.) Mr. Oliver erroneously denies ever giving "prior express consent" to receive the

2  calls at the 0888 number. (*Id.* at ¶ 22; Keith Decl. ¶¶ 7-8; **Exhibit 3**, Steven Oliver's Marshall Medical

3  Emergency/Outpatient Registration Form, RCA 00014; **Exhibit 4**, Karen Klein's Marshall Medical

4  Emergency/Outpatient Registration Form, RCA 00015; SSUF 7.) The "prior express consent" to call

5  the 0888 number was first provided by Mr. Oliver to the medical provider on whose behalf Rash Curtis

6  was calling; it was again provided vicariously to the same medical provider by Mr. Oliver's

7  grandmother, Karen Klein. (Keith Decl. ¶¶ 7-8, 10-11; **Exhibit 3**; **Exhibit 4**; SSUF 7.)

8      "Prior express consent" to call a phone number may be given by an intermediary, on behalf of

9  the called party. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119-24 (11th Cir. 2014).

10  Mr. Oliver's grandmother, Ms. Klein, validly gave consent to call the 0888 when she provided it to

11  Marshall Medical in connection with her medical treatment that resulted in the debt that Rash Curtis

12  was attempting to collect. (Keith Decl. ¶¶ 8-11; **Exhibit 4**; **Exhibit 5,** Rash Curtis Account No.

13  2615238 Referral from Marshall Medical of Karen Klein's August 12, 2015 Treatment; SSUF 7.) The

14  pattern of conduct and relationship between Ms. Klein and Mr. Oliver, her grandson, demonstrates that

15  Ms. Klein had the authority to give that consent: Ms. Klein had answered Mr. Oliver's phone in the

16  past and held herself out as his guardian; they lived together until at least as recently as 2013; and they

17  have both represented to Marshall Medical that they are each other's nearest relative and contact, and

18  so provided each other's contact information and phone number. Accordingly, Rash Curtis, standing

19  in Marshall Medical's shoes, possessed the "prior express consent" to call the 0888 number which was

20  given by Ms. Klein to Marshall Medical.

21  **C.    Rash Curtis Is Entitled To Summary Judgment As To Plaintiff's FDCPA Cause Of**
22       **Action As A Matter Of Law**

23      As a preliminary matter, Mr. Oliver's complaint fails to point to any specific section of the

24  FDCPA which Rash Curtis has allegedly violated.  (**Exhibit 1**, *passim,* and Count II; SSUF 2.)

25  Nonetheless, Rash Curtis submits that it has not violated *any* section of the FDCPA.

26      Assuming, *arguendo*, that Mr. Oliver intended to allege a violation of section 1692d(5), which

27  proscribes substantially similar conduct as the Rosenthal Act sections that Mr. Oliver alleges Rash

28  Curtis violated, Rash Curtis submits that it has not violated section 1692d(5) because it did not engage

- 3 -

1  in harassing, oppressive, or abusive conduct pursuant to 15 U.S.C. § 1692d(5) <u>as a matter of law</u>.  No

2  evidence shows that Rash Curtis actually caused Mr. Oliver's cell phone to ring repeatedly or

3  continuously <u>*with an intent*</u> to annoy him, as required by 15 U.S.C. § 1692d(5).  *See, e.g., Arteaga v.*

4  *Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (daily or nearly daily calls alone

5  found not to violate 1692d(5) as a matter of law); *Jiminez v. Accounts Receivable Mgmt.*, 2010 WL

6  5829206 at *5 (C.D. Cal. 2010) (69 unanswered calls over a 115-day period found not to violate

7  1692d(5) as a matter of law); *Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301, 1305-1306 (M.D.

8  Fla. 2010) (up to 7 calls per day found not to violate 1692d(5) as a matter of law); *Jones v. Rash Curtis*

9  *& Associates,* 2011 WL 2050195, *3 (N.D. Cal. 2011) (179 calls in a year found not to violate

10  1692d(5) as a matter of law).

11  Here, there is no showing that any of the calls placed to the 0888 number were placed <u>*with the*</u>

12  <u>*intent*</u> to harass, oppress, or abuse Mr. Oliver as required by §1692d(5), and Rash Curtis denies any

13  such allegation.  (Keith Decl. ¶ 6; SSUF 8.)  As a matter of law, the number and frequency of calls

14  alleged by Mr. Oliver, 35 calls over the period of 46 days, which is fewer than one call per day, is not

15  excessive and does not constitute harassment.   (Keith Decl. ¶¶ 12-13; **Exhibit 6**, Rash Curtis'

16  Collection Notes/Business Record as to its collection efforts for Karen Klein, RCA 00011-00013;

17  SSUF 9.)  The body of case law on §1692d(5), discussed *infra*, shows that in cases where a debt

18  collector has been unable to reach a debtor, daily or near-daily calls (like here), evince an <u>*intent to*</u>

19  <u>*establish contact*</u> with the debtor and <u>*not an intent to annoy or harass*</u>.

20  Rash Curtis also submits that Mr. Oliver did not suffer a cognizable, actual injury under the

21  FDCPA, other than purported transitory "annoyance."[1]  *Beattie v. D.M. Collections, Inc.,* 754 F.Supp.

22  383, 393-394 (D. Del. 1991). This is a situation where none of Rash Curtis' communication attempts

23  were successful.  (Keith Decl. ¶¶ 5, 12-13, 19; **Exhibit 6**, *passim*; SSUF 6.)  The records demonstrate

24  that none of the calls placed by Rash Curtis to the 0888 number resulted in an actual conversation with

25  Mr. Oliver or his grandmother, Ms. Klein.  (Keith Decl. ¶¶ 5, 12-15, 19; **Exhibit 6**, *passim*; SSUF 6.)

26  If Rash Curtis had been notified by Mr. Oliver that Ms. Klein could not be reached at the 0888 number,

27

28  _____
   [1] This is not an Article III argument, but rather a failure to establish a prima facie case of actual damages.

- 4 -

1    or that he wished not to be called, Rash Curtis would have stopped calling the 0888 number; however,

2    Rash Curtis was never so notified. (Keith Decl. ¶¶ 5, 15; SSUF 6.)

3         Courts have repeatedly noted that phone calls made by a debt collector to a debtor, even if

4    "annoying" in the abstract, do not cause the type of emotional distress cognizable under the FDCPA -

5    as a matter of law. *Beattie, supra,* 754 F.Supp. at 393-394; *see Costa v. National Action Financial*

6    *Services*, 634 F.Supp.2d 1069, 1079 (E.D. Cal. 2008) (emotional distress damages denied because

7    mere annoyance from collection calls is insufficient to give rise to cognizable damages) (*citing Ross v.*

8    *Creel,* 100 Cal.App.4th 736, 746-747 (2002); *compare Girard v. Ball*, 125 Cal.App.3d 772, 781-782

9    (1981) ("annoyance" insufficient). Here, there is no showing that the calls placed to the 0888 number

10    caused Mr. Oliver any actual injury. Rash Curtis is entitled to summary judgment on this claim.

11 **D.**    **Rash Curtis Is Entitled To Summary Judgment As To Plaintiff's Rosenthal Act Cause Of**
12        **Action As A Matter Of Law**

13         Rash Curtis also seeks summary judgment as to Mr. Oliver's Rosenthal Act claims brought

14    under California Civil Code §§ 1788.11(d)-(e) and 1788.17. Mr. Oliver lacks standing to assert

15    Rosenthal Act claims under §§ 1788.11(d)-(e), because he personally was not a participant in a

16    "consumer credit transaction" as defined by §1788.2(e) that resulted in "consumer debt" as defined by

17    §1788.2(f). *See Gouskos v. Aptos Village Garrage, Inc.*, 94 Cal.App.4th 754, 759-760 (2001) (a

18    consumer credit transaction does not mean a transaction where services are provided in advance of

19    payment, but where a person acquires services *on credit*); Cal. Civ. Code §§ 1788.2(e)-(f). No

20    consumer credit transaction occurred here between Mr. Oliver and Marshall Medical.

21         Mr. Oliver's Rosenthal Act claims under §§ 1788.11(d)-(e) and 1788.17 also fail as a matter of

22    law because of the lack of actual injury, as discussed. *See, e.g., Arteaga, supra,* 733 F.Supp.2d at

23    1229; *Jiminez, supra,* 2010 WL 5829206 at *3; *Jones, supra,* 2011 WL 2050195 at *4 (finding that

24    "[p]laintiff's claims under the Rosenthal Act are practically identical to the federal claims and fail for

25    all the same reasons"). There is also no showing of "willfulness," which is required to obtain statutory

26    damages under §1788.30(b). Thirty-five calls were attempted over a period of 46 days, and none

27    resulted in an actual conversation.[2] There can be no "intent" to harass or annoy as a matter of law

28

---

[2] One of these calls did not go through because the line was busy.

1  under such circumstances.  Because Mr. Oliver suffered no actual injury, and Rash Curtis' volume and

2  pattern of calls do not constitute harassment as a matter of law, Rash Curtis is entitled to summary

3  judgment on this claim.

## II.    FACTUAL BACKGROUND

5  Steven Oliver and his grandmother, Karen Klein, have both received medical treatments from

6  Marshall Medical.  (Keith Decl. ¶¶ 7-8; **Exhibit 3**; **Exhibit 4**; SSUF 7.)   Marshall Medical's

7  emergency/outpatient registration form has a field for patients to provide the name and contact

8  information of their nearest relative and contact. (Keith Decl. ¶¶ 7-8; **Exhibit 3**; **Exhibit 4**; SSUF 7.)

9  On August 12, 2015, Ms. Klein was admitted for treatment by Marshall Medical.  (Keith Decl.

10  ¶ 8; **Exhibit 4**; SSUF 7.)  She provided the name and phone number of her grandson, Steven Oliver, as

11  her nearest relative. (*Id.*; SSUF 7.)  Nothing on the registration form restricts Marshall Medical, or its

12  agent, from using any of the contact information provided for billing purposes. (*Id.*; SSUF 11.)

13  Ms. Klein's medical bill from her August 12, 2015 visit to Marshall Medical went unpaid, and

14  was referred to Rash Curtis for collection on March 14, 2016.  (Keith Decl. ¶¶ 10-11; **Exhibit 5**; SSUF

15  12.)   Rash Curtis had been referred multiple accounts by Marshall Medical in relation to unpaid

16  accounts of Ms. Klein's in the past, many of which were still due at the time this action was

17  commenced, including the bill from her August 12, 2015 treatment.  (Keith Decl. ¶ 10; **Exhibit 5**;

18  SSUF 13.)  Marshall Medical has also referred multiple accounts owed by Mr. Oliver to Rash Curtis

19  for collection, which were also still due at the time this action was commenced.  (Keith Decl. ¶¶ 16-17;

20  **Exhibit 7**, Rash Curtis' Collection Notes/Business Record as to its collection efforts for Steven Oliver,

21  Rash Curtis 00002-00004; SSUF 14.)

22  One such debt of Mr. Oliver was incurred on March 13, <u>2013</u>, when Mr. Oliver was admitted to

23  Marshall Medical for treatment; his registration form provided the name and contact information of his

24  grandmother and nearest relative, Karen Klein, as well as the 0888 phone number.  (Keith Decl. ¶¶ 7,

25  16-17; **Exhibit 3**; **Exhibit 7**, Rash Curtis 00004; SSUF 15.)  Indeed, both Ms. Klein and Mr. Oliver

26  had each provided one another's names and phone numbers to Marshall Medical, who then transmitted

27  that information to Rash Curtis.  (Keith Decl. ¶¶ 7-8; **Exhibit 3**; **Exhibit 4**; SSUF 16.)

28  Mr. Oliver has had multiple accounts referred to Rash Curtis for collection spanning many

- 6 -

years.  (Keith Decl. ¶ 17; **Exhibit 7**, Rash Curtis 00001-00004; SSUF 17).  During a call placed by Rash Curtis to Steven Oliver on May 5, 2005, a woman answered his phone and told Rash Curtis that she was Steven Oliver's grandmother and guardian; it is believed that this woman was Ms. Klein. (Keith Decl. ¶ 16, 18; **Exhibit 7**, 05/05/05 entry, Rash Curtis 00001; SSUF 10.)  Mr. Oliver, who was born March 27, 1985, was age twenty at the time Ms. Klein claimed to be his guardian.  (Keith Decl. ¶ 7; **Exhibit 3**, birthdate field; **Exhibit 7**, 05/05/05; SSUF 10, 18.)  Mr. Oliver admits that Ms. Klein is his grandmother, and it is undisputed that they are each other's nearest relatives, as they have both so represented to Marshall Medical.  (Keith Decl. ¶¶ 7-8; **Exhibit 1**, ¶¶ 9, 14; **Exhibit 3**; **Exhibit 4**; SSUF 7, 15-16.)  According to Marshall Medical's records, Mr. Oliver and Ms. Klein were living at the same address at least as recently as March 13, 2013. (Keith Decl. ¶ 7; **Exhibit 3**; SSUF 19.)

Rash Curtis began placing calls to Ms. Klein on March 15, 2016, attempting to collect the debt that she incurred on August 12, 2015.  (Keith Decl. ¶¶ 12-13; **Exhibit 6**, *passim*; SSUF 5.)  Rash Curtis placed calls to two phone numbers: the number that Ms. Klein had provided as her own, and the 0888 number that Ms. Klein provided as belonging to her nearest relative and contact, Steven Oliver. (Keith Decl. ¶¶ 12-13; **Exhibit 6**, *passim*; SSUF 5.)  Rash Curtis was unable to establish contact with Ms. Klein (or Mr. Oliver) as a result of any of the calls placed to either of the two phone numbers. (Keith Decl. ¶¶ 5, 12-15; **Exhibit 6**, *passim*; SSUF 5.)

Between March 15, 2016 and April 29, 2016, Rash Curtis placed only 35 calls to the 0888 number, although one of the calls did not go through because the line was busy.  (Keith Decl. ¶¶ 12-14; **Exhibit 6**, *passim*, and 03/29/16 entry; SSUF 9.)  During these 46 days, Rash Curtis placed fewer than one call per day to the 0888 number.  (Keith Decl. ¶¶ 12-14; **Exhibit 6**, *passim*; SSUF 9.)  Rash Curtis only called the 0888 number twice on the same day on two occasions.  The first time was on March 18, 2016, which was the only time Rash Curtis left a message; that message was a "live" message and not prerecorded.  (Keith Decl. ¶¶ 12-14; **Exhibit 6**, *passim*, and 03/18/16 entry, RCA 00011; SSUF 9.) The other time was on March 29, 2016, when one of the calls did not go through because the line was busy.  (Keith Decl. ¶¶ 12-14; **Exhibit 6**, *passim*, and 03/29/16 entry, RCA 00012; SSUF 9.)  With the exception of those two occasions, Rash Curtis did not place more than one call per day to the 0888 number.  (Keith Decl. ¶¶ 12, 14; **Exhibit 6**, *passim*; SSUF 9.)  Rash Curtis was unable to successfully

- 7 -

1  establish contact with anyone as a result of its calls placed to the 0888 number, and has been unable to

2  successfully establish contact with Karen Klein regarding her account at any phone number.  (Keith

3  Decl. ¶¶ 5, 12-15, 19; **Exhibit 6**, *passim*; SSUF 5.)

4      All of the calls placed to the 0888 number during the relevant time period were placed using

5  "Global Connect."  (Keith Decl. ¶ 20; **Exhibit 6**, *passim*; SSUF 4.)  Global Connect has no present

6  ability to generate (as in "create") random or sequential numbers and dial them; it only has the ability

7  to dial numbers from a list provided by its user, which is the case here, where Rash Curtis entered the

8  0888 number into Global Connect.  (Keith Decl. ¶ 20; SSUF 4.)

9                          **III.   PLAINTIFF'S CLAIMS**

10  **A.    The Telephone Consumer Protection Act Claims – 47 U.S.C. § 227**

11      Mr. Oliver alleges that Rash Curtis violated 47 U.S.C. § 227(b)(1)(A)(iii).  Parsing the

12  language of that section of the TCPA, the TCPA restricts calls as follows:  "*It shall be unlawful*. . .*if*

13  *the recipient is within the United States –to make any call* (*other than a call* made for emergency

14  purposes or *made with the prior express consent of the party called*) *using any automatic telephone*

15  *dialing system or an artificial or prerecorded voice*. . . *to any telephone number assigned to a*. . .

16  *cellular telephone service*, . . . *or* any service *for which the called party is charged for the call*."  47

17  U.S.C. § 227(b)(1)(A)(iii) (emphasis added); *see also Baisden v. Credit Adjustments, Inc.*, 813 F.3d

18  338, 342 (6th Cir. 2016) (*citing* 47 U.S.C. § 227(b)(1)(A)(iii)).

19      On March 16, 2018, the D.C. Circuit Court of Appeals, in a groundbreaking decision, found

20  that for a dialer to meet the definition of an "ATDS" under the TCPA, the dialer must have the ability

21  to generate (that is, to create) random or sequential numbers and then actually dial them.  *See ACA*

22  *Int'l, supra*, 2018 WL 1352922 at *11-*12.

23      The Ninth Circuit has found that if "prior express consent" exists, it is a complete affirmative

24  defense.  *Van Patten, supra,* 847 F.3d at 1046.  The TCPA does not define "prior express consent."

25  The Federal Communications Commission ("FCC"), however, pursuant to its rulemaking and

26  interpretative authority under the TCPA, has issued a number of guiding orders outlining the meaning

27  of "prior express consent."  *See Van Patten, supra,* 847 F.3d at 1044; *see also Hudson, supra,* 2014

28  WL 2892290 at *3.  The FCC has ruled:  "[P]ersons who knowingly release their phone number *have*

                                    - 8 -

*in effect given their invitation or permission to be called at the number* which they have given, *absent instructions to the contrary*." 1992 FCC TCPA Order, 7 FCC Rcd. at 8796, ¶ 31 (hereinafter, the "1992 TCPA Order") (emphasis added). When a person provides his or her cellular telephone number to a business, the consumer has provided "prior express consent" to be called *at that number*. *Van Patten, supra,* 847 F.3d at 1044-1047. In its 2008 Order, the FCC held: "[W]e conclude that the provision of a cellphone number... reasonably evidences prior express consent..." *See Van Patten, supra,* 847 F.3d at 1044 (*citing Mais, supra,* 768 F.3d at 1119-24).

Significantly, the FCC has also ruled that when consent is provided to a creditor, that consent flows to its agent as well. *Hudson, supra,* 2014 WL 2892290 at *3. Specifically, the FCC has ruled: "Calls placed by a third-party collector on behalf of that creditor *are treated as if the creditor itself placed the call*." 2008 TCPA Order, 23 FCC Rcd. at 565 (emphasis added).

**B.     The Fair Debt Collection Practice Act Claims, 15 U.S.C. §§ 1692, *et seq.***

Mr. Oliver next alleges that Rash Curtis' alleged conduct violates of the FDCPA, although Mr. Oliver does specify which section of the FDCPA which Rash Curtis has allegedly violated. (**Exhibit 1**, *passim*, and Count II; SSUF 2.) Because of Mr. Oliver's refers to California Civil Code §§ 1788.11(d)-(e) in this section of his complaint (which deal with harassment), Rash Curtis assumes, *arguendo,* that Mr. Oliver intended to allege a violation of section 1692d(5) which also relates to harassment. Section 1692d states, in part: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . . the following conduct is a violation of this section...[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any person at the called number..." 15 U.S.C. § 1692d(5) (emphasis added).

**C.     The Rosenthal Fair Debt Collection Practice Act Claims, Civ. Code §§ 1788, et seq.**

Mr. Oliver alleges that Rash Curtis' conduct caused his telephone to ring repeatedly or continuously with the intent to annoy him, in violation of California Civil Code § 1788.11(d). (**Exhibit 1**, ¶ 37.) Furthermore, he alleges that Rash Curtis communicated with him with such frequency as to be unreasonable, constituting harassment, in violation of California Civil Code § 1788.11(e). (**Exhibit 1**, ¶ 32.) Notably, a "communication" under section 1788.11(e) requires *actual*

- 9 -

*contact* between the debt collector and the debtor.

Lastly, Mr. Oliver alleges that Rash Curtis did not comply with the provisions of 15 U.S.C. §§ 1692, *et seq.*, in violation of California Civil Code § 1788.17.  **(Exhibit 1, ¶ 38.)**  Mr. Oliver's allegation that Rash Curtis violated section 1788.17 of the Rosenthal Act, which requires every debt collector to comply with the FDCPA, 15 U.S.C. §§ 1692b-1692j is, in other words, a claim that if Rash Curtis violated the FDCPA, it also, *ipso facto,* violated the Rosenthal Act.  **(Exhibit 1, ¶ 38.)**

## IV.   ANALYSIS

### A. Plaintiff's TCPA Claim Fails Because Rash Curtis Did Not Use An "ATDS"

The plain language of the TCPA restricts calls as follows: "It shall be unlawful. . .if the recipient is within the United States – to make any call … using any automatic telephone dialing system or an artificial or prerecorded voice. . . to any telephone number assigned to a. . . cellular telephone service, . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).  A *prima facie* violation has been interpreted to require three elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer, supra*, 707 F.3d at 1043.

Mr. Oliver has not met his burden of establishing a *prima facie* case under the TCPA because the dialing technology used by Rash Curtis to place these calls <u>does not have the capacity to generate random or sequential numbers and dial them, as required to be considered an "ATDS" under the TCPA</u>. *See ACA Int'l, supra,* 2018 WL 1352922 at *11-*12.  (Keith Decl. ¶ 20; SSUF 4.)  Here, the dialers used by Rash Curtis only possess the ability to dial numbers which are loaded from a list. (Keith Decl. ¶ 20; SSUF 4.)  Because Rash Curtis' dialers did not have the capacity to generate (as in "create") random or sequential numbers and then automatically dial them, they were not an "ATDS" under the TCPA, and Rash Curtis is entitled to summary judgment on Mr. Oliver's TCPA claim.

### B.   Plaintiff's TCPA Claim Is Barred By The Affirmative Defense Of "Prior Express Consent"

Even if, *arguendo*, Rash Curtis did use an "ATDS," it did so with the "prior express consent" to dial the 0888 number before making any these calls, and has not violated the TCPA.

- 10 -

**1.    Rash Curtis Had Plaintiff's "Prior Express Consent" At All Times Either Directly or Vicariously**

"Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Costa, supra,* 634 F.Supp.2d at 1073 (*citing Celotex Corp. v. Catrett,* 477 S.Ct. 2548 (1986)).   In *Celotex,* the US Supreme Court held that: "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 2553.

"[The Ninth Circuit] has refused to find a 'genuine' where the only evidence presented is 'uncorroborated and self-serving' testimony."   *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002); *see also Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996).   Rash Curtis submits that there is no genuine issue of material fact here, where Mr. Oliver's uncorroborated and self-serving assertion that Rash Curtis did not have his "prior express consent" to call the 0888 number stands in contradiction to Rash Curtis' business records and the supporting Declaration of Robert Keith, discussed *infra.*   "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex, supra,* 477 S.Ct. at 2553.

Here, the "prior express consent" to call the 0888 number was first given by Mr. Oliver when he provided the 0888 number in connection with his medical treatment to Marshall Medical. Moreover, Rash Curtis separately obtained "prior express consent" to call the 0888 number when Ms. Klein provided the 0888 number in connection with her medical treatment to Marshall Medical.   "[A debt collector is] entitled to attempt to contact [a debtor] at any number provided by her creditors…" *Jones, supra,* 2011 WL 2050195 at *3.   Under these circumstances, where Mr. Oliver and Ms. Klein: (1) had both provided each other's names and phone numbers to Marshall Medical; (2) had both represented that they are each other's nearest relative and contact; (3) had been known to live together at least until recently, and; (4) where Ms. Klein at one time answered Mr. Oliver's phone and held

- 11 -

herself out as his guardian (at a time when he was over the age of 18), Ms. Klein <u>had the authority</u> to validly provide the "prior express consent" to call the 0888 number to Marshall Medical. *See Mais, supra,* 768 F.3d at 1119-24. As such, Rash Curtis is entitled to summary judgment on this issue.

       **2.**      **Rash Curtis Acted with a Reasonable, Good Faith Belief that it had Prior Express Consent to Call Plaintiff**

       This Court has found that a defendant in a TCPA action may assert, as a defense, that it placed calls to a phone number with a reasonable, good faith belief that "prior express consent" existed. *Springer v. Fair Isaac Corp.,* 2015 WL 7188234 at *2-*3 (E.D. Cal. 2015). This position is further supported by the recent decision in *ACA Int'l, supra,* 2018 WL 1352922, where the court, acknowledging that the FCC's 2015 TCPA order "embraced the interpretation of the statutory phrase 'prior express consent' [as being] <u>grounded in conceptions of reasonable reliance</u>..." overruled the "one-call safe harbor," instead finding that it is not reasonable to expect a caller to "divine from…mere silence" that a debtor who provided a phone number cannot be reached at that number. *Id.* at *15-*17 (emphasis added). Such is the case here, where Rash Curtis never established contact.

       In *Springer,* this Court found that a "[d]efendant is allowed to raise a good faith defense asserting prior express consent because such a defense is applicable to the TCPA." *Springer, supra,* 2015 WL 7188234 at *3; *see also Chyba v. First Fin. Asset Mgmt.,* 2014 WL 1744136 at *12 (S.D. Cal. 2014) ("[e]ven if [p]laintiff is correct in stating that she never gave [d]efendant or [creditor] consent to call, and there was no *actual* consent from [p]laintiff, [d]efendant is not liable for acting in good faith upon the information provided to it").

       Rash Curtis submits that it acted in good faith, and reasonably relied on the registration form provided by Marshall Medical where Ms. Klein provided the 0888 number as the basis for "prior express consent" to call the 0888 number. <u>Because Rash Curtis was never notified by Mr. Oliver that Ms. Klein was unreachable at the 0888 number</u>, Rash Curtis' belief that it had "prior express consent" based on the information provided to it by Marshall Medical was reasonable and in good faith, and placing these calls based off of that reasonable and good faith belief was reasonable as a matter of law.

       Rash Curtis, acting with a good faith and the reasonable belief that "prior express consent" existed (which Rash Curtis maintains is also an accurate position), did not violate the TCPA, and is

- 12 -

entitled to summary judgment on Mr. Oliver's TCPA claim.

### 3.   Plaintiff Did Not Effectively Revoke Consent To Be Called

While the TCPA does not provide express statutory authorization for revocation of "prior express consent," a consumer's ability to revoke consent is consistent with basic common law principles of consent.  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013).  Revocation of consent must be clearly made and clearly express the desire not to be called.  *See Van Patten, supra*, 847 F3d at 1048.  "[T]he TCPA requires – at a minimum – express and clear revocation of consent; implicit revocation will not do."  *In re Runyan*, 530 B.R. 801, 807 (Bankr. M.D. Fla. 2015) (emphasis added).  Mr. Oliver fails to allege any facts which could constitute a clear and express desire not to be called, the legal standard set forth in *Van Patten* and affirmed in *ACA Int'l*.

Importantly, Mr. Oliver admits in his complaint that he never spoke with a Rash Curtis collector.  (**Exhibit 1**, ¶ 17.)  Nor does Mr. Oliver allege to have ever sent any written notice to Rash Curtis requesting that the calls stop, or taken any other measures to notify Rash Curtis that he did not consent to be called.  Mr. Oliver never notified Rash Curtis in any way, much less "clearly and expressly," that he desired not to be called at the 0888 number.  (Keith Decl. ¶¶ 5, 19; **Exhibit 6**, *passim*; SSUF 6.)  Because there is no showing that Mr. Oliver <u>ever</u> expressed a desire not to be called, Rash Curtis is entitled to summary judgment that Mr. Oliver never revoked consent.

### 4.   None Of The Calls Were Made "Knowingly Or Willfully" Without Consent

None of the calls placed by Rash Curtis to the 0888 number were made with the "knowing or willful" intent required to award treble damages.  "**Plaintiff…has to show** that [defendant] **knew** that Plaintiff did not consent to the phone calls."  *Warnick v. Dish Network LLC*, 2014 WL 12537066 at *17 (D. Colo. Sept. 30, 2014) (emphasis added).  Because Mr. Oliver did not request that Rash Curtis stop calling, or tell Rash Curtis that Ms. Klein could not be reached at his number, Rash Curtis did not actually know that it was acting without consent.  Rash Curtis submits that it was *correctly* acting under the impression that "prior express consent" existed to call the 0888 number *at all times* for the reasons discussed above.  Mr. Oliver has not met <u>his burden</u> of proving that Rash Curtis placed these calls "willfully," as required by the TCPA for an award of treble damages.

- 13 -

C.   **Defendant Is Entitled To Summary Judgment On Plaintiff's FDCPA And Rosenthal Act Claims**

1.   **Plaintiff Cannot Establish a Violation Under 15 U.S.C. § 1692d(5)**

In determining liability under section 1692d(5), courts consider the volume and pattern of calls made to the debtor.  Indeed, the determination of whether a debt collection agency's telephone calls amount to "actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492, 505 (D. Md. 2004).   Many courts have granted summary judgment to defendant collectors where the "harassment" constituted, as here, claims of a large volume of calls, but where the collectors are, as here, simply attempting to establish contact with the debtor.  *See, e.g., Tucker, supra,* 710 F.Supp.2d at 1305; *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009).

In *Tucker*, for example, the court granted summary judgment in favor of the debt collector, stating: "Defendant only left a total of **six messages**, made no more than **seven calls in a single day**, and did not call back the same day after leaving a message. The evidence demonstrates that [defendant] placed each of its telephone calls with <u>an intent to reach [debtor, plaintiff's daughter] rather than an intent to harass [him]</u>." *Tucker, supra,* 710 F.Supp.2d at 1305 (emphasis added).   In *Tucker*, the defendant debt collector placed **57 phone calls** attempting to collect a debt from the plaintiff's daughter, who had lived with him several years prior. *Id.* at 1303 (emphasis added).

The court in *Tucker* found that there was <u>no harassment as a matter of law</u> based on the call volume and pattern, and "[n]otably, [d]efendant never even spoke to [p]laintiff; **[d]efendant was not notified that it could not reach [his daughter, the debtor]** at the relevant telephone number and **[p]laintiff did not request that [defendant] cease calling** … The evidence demonstrates that **[defendant] placed each of its telephone calls with an intent to reach [the debtor] rather than intent to harass**." *Id.* at 1305 (emphasis added). And, so it is here.

In *Saltzman*, the court granted summary judgment in favor of the debt collector, stating:

> "The Court finds no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite "intent to annoy, abuse, or harass" in making the telephone calls at issue. . . Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse. . .

- 14 -

> Defendant's telephone calls, as she recognized Defendant's telephone number on her caller I.D. Plaintiff further testified that she did not recall Defendant leaving any voice messages for her. The record also indicates a significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff—a ratio of, at best, 1:5. This suggests a "difficulty of reaching Plaintiff, rather than an intent to harass."
>
> Beyond the broad allegations contained in her Complaint, Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse. Plaintiff has not pointed to any evidence in the record regarding the amount, frequency, pattern, or content of Defendant's calls that would suggest anything other than a legitimate, albeit persistent, effort to reach her. As the FDCPA does not prohibit such legitimate attempts to contact a debtor, and due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim."

*Saltzman, supra,* 2009 WL 3190359, at *7 (internal citations and footnotes omitted).

In short, a high number of calls, by itself, has repeatedly been found *not* to constitute a violation of the FDCPA – as a matter of law. "Absent egregious conduct…merely calling a debtor repeatedly, even multiple times in a single day, does not violate the FDCPA." *Hinderstein v. Advanced Call Str. Techs.,* 2017 WL 751420 at *3 (C.D. Cal. 2017). Here, Rash Curtis was only trying to establish contact with Ms. Klein, and had no intent to harass Mr. Oliver.

Under these circumstances, courts hold that a high volume of calls reflect an intent to establish contact, not an intent to annoy, abuse or harass the debtor. *See, e.g., Chavious v. The CBE Group,* 2012 WL 113509, at *2 (E.D. NY 1/12/2012) (36 calls in a 2-month period not actionable as a matter of law); *Carmen v. CBE Group,* 782 F.Supp.2d 1223, 1232 (D. Kan. 2011) (149 calls; collector never reached debtor); *Tucker, supra,* 710 F.Supp.2d at 1305 (same); *Jones, supra,* 2011 WL 2050195, at *2- *3 (179 phone calls – no violation); *Lynch v. Nelson, Watson & Assoc., LLC,* 2011 WL 2472588, at *2 (D. Kan. 6/11/11) (86 calls over three months – no violation); *Waite v. Financial Recovery Services, Inc.,* 2010 WL 5209350, *3, 6 (M.D. Fla. Dec. 16, 2010) (the court ruled that 132 calls in a nine-month period was not a violation of the FDCPA as a matter of law).

In *Jiminez, supra,* 2010 WL 5829206, the court found in favor of the collector as a matter of law, finding that no reasonable jury could find that 69 unanswered calls over a 115-day period violated § 1692d(5) of the FDCPA.

In *Arteaga, supra,* 733 F.Supp.2d at 1229, the court ruled:

[T]he court finds that [defendant]'s conduct did not rise to the level of harassment under section 1692d. . .[plaintiff] presents no evidence that [defendant] called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested [defendant] to cease calling. Indeed, [plaintiff] does not claim that she requested [defendant] to cease calling her, and only recalls the substance of one conversation in which [plaintiff] initiated the communication with [defendant]. . ..[Plaintiff] fails to cite a single case in which "daily" or "nearly daily" phone calls alone raises an issue of fact as to these claims. Rather the case law supports [defendant]'s position that. . .the conduct does not constitute harassment as a matter of law.

In *Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135, 1143-44 (D. Kan. 2004), the court held that four automated telephone calls to consumers over the course of seven days without leaving a message did not, as a matter of law, constitute harassment under the FDCPA.

In *VanHorn v. Genpact Servs.*, 2011 WL 4565477 at (W.D. Mo. 2011), the court held that 114 calls in four months, absent other egregious conduct, did not violate the FDCPA as a matter of law.

In *Bey v. Daimler Chrysler Servs., LLC*, 2006 WL 361385 (D.N.J. Feb. 15, 2006), the court granted judgment in favor of the collector even though the collector called multiple times in one day without leaving any messages.

In *Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323 (C.D. Cal. 2010), by contrast, the court denied the collector's motion for summary judgment. But there, the phone calls to the debtor exceeded 180 in a 1-month period, or about 5 calls per day. This is clearly not the situation here.

Here, Rash Curtis called the 0888 number only <u>35 times</u> from March 15, 2016 until April 29, 2016 (not even once per day). (Keith Decl. ¶¶ 12-14; **Exhibit 6**, *passim*; SSUF 9.) Rash Curtis' records prove that it <u>had no actual conversations</u> with Mr. Oliver or Ms. Klein as a result of the calls placed to the 0888 number, and it only ever left a single "live" message. (Keith Decl. ¶¶ 5, 12-15, 19; **Exhibit 6**, *passim*, and 03/18/16 entry; SSUF 6, 9.) Rash Curtis did not engage in any egregious behavior which has been found to constitute harassment by other courts, such as calling at unusual hours or calling immediately after a plaintiff hangs up. *See Arteaga, supra,* 733 F.Supp2d at 1228-9.

"<u>Under [these] circumstances…a reasonable juror would only find that the defendant called the plaintiff with the intent to reach her to collect the debt, and not because it intended to annoy, abuse, or harass her.</u>" *Hinderstein, supra,* 2017 WL 751420 at *4 (emphasis added). There is simply no evidence from which a finder of fact could reasonably infer that Rash Curtis engaged in harassing

- 16 -

conduct or acted with the intent to annoy or oppress Mr. Oliver, so his claim must fail as a matter of law. As such, Rash Curtis is entitled to summary judgment on Mr. Oliver's FDCPA claim.

### 2. Plaintiff Lacks Standing To Assert A Rosenthal Act Claim Under Cal. Civ. Code §§ 1788.11(d)-(e)

Mr. Oliver's claims under Cal. Civ. Code §§ 1788.11(d)-(e) should be dismissed because any claim under these sections requires there to have been a "consumer credit transaction" as defined by §1788.2(e) that resulted in "consumer debt" as defined by §1788.2(f), which is not present here. *See Gouskos, supra,* 94 Cal.App.4th at 759-760.

In *Gouskos*, the court found that a consumer credit transaction does not mean a transaction where services are provided in advance of payment, *but where a person acquires services on credit,* which is not the case here, where Karen Klein simply failed to pay her medical bills. *Id.* As such, Rash Curtis is entitled to summary judgment on Mr. Oliver's §§1788.11(d)-(e) claims because there was no "consumer credit transaction" under the Rosenthal Act.

### 3. Plaintiff Cannot Establish A Separate Violation Under Cal. Civ. Code §§ 1788.11(d)-(e)

Additionally, Mr. Oliver's Rosenthal Act claims under California Civil Code §§ 1788.11(d)-(e) also fail because the volume and pattern of calls does not constitute actionable harassment **as a matter of law**. Section 1788.11(d) is only violated when a debt collector causes a telephone to ring repeatedly or continuously to annoy the person called, and section 1788.11(e) is only violated when a debt collector communicates, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute harassment to the debtor under the circumstances. Section 1788.11(e) requires *actual contact* between the debt collector and the debtor, which did not occur here. *See Krapf, supra,* 2010 WL 2025323 at *4.

Furthermore, the Rosenthal Act was not violated here because Rash Curtis only placed 35 calls in 46 days, less than one call per day, and had zero *actual* conversations with Mr. Oliver or Ms. Klein. *See, e.g., Arteaga, supra,* 733 F.Supp.2d at 1229 (daily or nearly daily calls alone found not to violate 1692d(5) as a matter of law); *Jiminez, supra,* 2010 WL 5829206 at *5 (69 unanswered calls over a 115-day period found not to violate 1692d(5) as a matter of law); *Tucker, supra,* 710 F.Supp.2d at

- 17 -

1305-1306 (up to 7 calls per day found not to violate 1692d(5) as a matter of law); *Jones, supra,* 2011 WL 2050195, *3 (179 calls in a year found not to violate 1692d(5) as a matter of law). Because Rash Curtis had no actual intent to annoy Mr. Oliver, and the pattern and volume of calls does not amount to harassment <u>as a matter of law</u>, Rash Curtis is entitled to summary judgment on Mr. Oliver's claims under §§ 1788.11(d)-(e).

### 4. Plaintiff's Rosenthal Act Claim Under Cal. Civ. Code § 1788.17 Fails As A Matter Of Law Because Rash Curtis Did Not Violate The FDCPA

Mr. Oliver's Rosenthal Act claim under California Civil Code § 1788.17 must also dismissed because relief may only be granted under §1788.17 where a defendant has failed to comply with the FDCPA. *See* Cal. Civ. Code § 1788.17 (which provides a remedy under state law for violations of 15 U.S.C. §§ 1692b-g). Here, Rash Curtis has not violated the FDCPA, so Mr. Oliver has no cognizable claim under §1788.17. As discussed above, Mr. Oliver's FDCPA claim [which does not specify a section, but is suspected to be] under 15 U.S.C. § 1692d(5) fails as a matter of law because (1) there is no evidence that Rash Curtis acted with the <u>intent</u> to annoy, abuse, or harass Mr. Oliver, and (2) Rash Curtis <u>did not</u> act with the intent to annoy or harm Mr. Oliver, but was only trying to establish contact with Ms. Klein, who had provided his number to her medical provider. (Keith Decl. ¶ 6; SSUF 8.) Therefore, Mr. Oliver's Rosenthal Act claim under §1788.17 fails as a matter of law, and Rash Curtis is entitled to summary judgment on this claim.

### 5. Plaintiff Cannot Demonstrate That He Suffered Legally Cognizable Actual Injuries In The Form Of Emotional Distress, And Defendant Seeks Partial Summary Judgment As A Matter Of Law Under The FDCPA And Rosenthal Act On His Actual Damages Claim

Our courts have long recognized that debt collection naturally causes some embarrassment and annoyance. The legislative history of the FDCPA sheds light on the type of behavior that is deemed a violation, which includes: "[O]bscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's personal affairs to friends, neighbors or employer. . ." *Christy v. EOS CCA,* 905 F.Supp.2d 648, 654 (E.D. Pa. 2012) (*citing to* S.Rep. No. 95-982 at 2, 1977 U.S. C.C.A.N. 1695, 1696). But the fact that collection calls may be unwelcome, disruptive or annoying does not mean that, without more, they amount to a violation of federal or state

- 18 -

law, much less give rise to cognizable actual damages. *Costa, supra,* 634 F.Supp.2d at 1079; *Beattie, supra,* 754 F.Supp. at 393-394; *Bieber v. Assoc. Coll. Svcs., Inc.,* 631 F.Supp. 1410, 1417 (D. Kan. 1986); *Wright v. C.B. of Ga., Inc.,* 548. F.Supp. 591 (N.D. Ga. 1982); *Christy, supra,* 905 F.Supp.2d at 654 ("Notably, §1692d 'prohibits only oppressive and outrageous conduct'."); *Ross, supra,* 100 Cal.App.4th at 747; *Symonds v. Mercury Savings and Loan Assn.*, 225 Cal.App.3d 1458 (1990); *Bundren v. Superior Court*, 145 Cal.App.3d 784, 789 (1983).

The mere fact a debtor subjectively wishes he or she was not in debt collection, or the calls (during normal business hours) are inconvenient or embarrassing, does not, without more, create a violation. See, e.g., *VanHorn, supra,* 2011 WL 4565477; *Thomas v. LDG Financial Servs., Inc.*, 463 F.Supp.2d 1370 (N.D. Ga. 2006).  Because Mr. Oliver has failed to show any actual harm caused to him as a result of Rash Curtis' alleged conduct, Rash Curtis is entitled to summary judgment.

## V.    CONCLUSION

With respect to the TCPA, Mr. Oliver's claim fails because the dialer used by Rash Curtis does not have the ability to generate and dial random or sequential numbers, so it cannot be considered an "ATDS" under the TCPA, and there can be no liability thereunder.  Furthermore, "prior express consent" to call the 0888 number was given (1) directly to Marshall Medical by Mr. Oliver, and (2) vicariously by Ms. Klein, each on their patient registration forms, which Rash Curtis reasonably relied on.  Ms. Klein's authority to provide "prior express consent" to call the 0888 is established by the circumstances: Mr. Oliver and Ms. Klein had provided each other's names and phone numbers to Marshall Medical, and listed each other as nearest relative and contact; they had been known to live together; Ms. Klein had answered Mr. Oliver's phone in the past and held herself out as his grandmother and guardian.  Marshall Medical assigned the debt account to Rash Curtis, who stood in the shoes of Marshall Medical as to the "prior express consent" to call the 0888 number.  No revocation of consent was made, as Rash Curtis was unable to establish contact with neither Mr. Oliver nor Ms. Klein as a result of any of the calls placed to the 0888 number.

With respect to Mr. Oliver's FDCPA and Rosenthal Act claims, there is no evidence to suggest that the calls placed by Rash Curtis were intended to harass, oppress, abuse or annoy Mr. Oliver.  In this case, the near-daily calls without any other egregious conduct, indicate that Rash Curtis was only

- 19 -

attempting to establish contact with Ms. Klein, <u>as a matter of law</u>.   Moreover, Mr. Oliver lacks

standing to bring claims under sections 1788.11(d)-(e) of the Rosenthal Act because he did not

participant in a "consumer credit transaction" resulting in "consumer debt," as defined by the

Rosenthal Act.  Accordingly, Rash Curtis is entitled to summary judgment on all causes of action.

Dated: April 5, 2018

ELLIS LAW GROUP LLP


By  */s/  Mark E. Ellis*
    Mark E. Ellis
    Attorney for Defendant
    RASH CURTIS & ASSOCIATES

- 20 -