TRINETTE G. KENT (State Bar No. 222020)
3219 E Camelback Rd #588
Phoenix, AZ 85018
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Of Counsel to
Lemberg Law, LLC
A Connecticut Law Firm
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

Attorneys for Plaintiff,
Steven Oliver

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Steven Oliver, | Case No.: 2:16-CV-02413-TLN-CKD |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| Rash Curtis & Associates, | |
| Defendant. | Hearing Date: May 31, 2018<br>Time: 2:00 p.m.<br>Judge: Troy L. Nunley |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF THE FACTS ..........................................................................................1

ARGUMENT .......................................................................................................................3

I.    LEGAL STANDARD ...........................................................................................3

II.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE TCPA CLAIMS ..........................................................................4

    A.    Predictive Dialer's are ATDS ..............................................................5

    B.    Defendant's Predictive Dialer is an ATDS ...........................................8

    C.    Defendant Lacked Prior Express Consent to Call Plaintiff ....................9

        i.    *The Klein Emergency Medical Form did not provide prior express consent* ............................................................10

        ii.    *The Oliver Emergency Medical Form did not provide prior express consent* ............................................................12

        iii.    *Rash Curtis was not acting with good faith* ...............................13

    D.    Rash Curtis is Not Entitled to Summary Judgment on the Issue of Treble Damages ............................................................................14

III.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE FDCPA CLAIMS ...................................................................15

IV.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE ROSENTHAL ACT CLAIMS ...........................................17

    A.    Plaintiff has Standing ........................................................................17

    B.    Defendant Violated Cal. Civ. Code § 1788.11(d) ...............................17

    C.    Defendant Violated Cal. Civ. Code § 1788.17 ....................................18

V.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING ACTUAL DAMAGES ......................................................................18

CONCLUSION .................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*ACA Int'l v. Fed. Commc'ns Comm'n,*
  885 F.3d 687 (D.C. Cir. 2018)......................................................................5, 6, 7, 8, 14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...............................................................................................3

*Arteaga v. Asset Acceptance, LLC,*
  733 F. Supp. 2d 1218 (E.D. Cal. 2010) ...................................................................16

*Baird v. Sabre, Inc.,*
  636 F. App'x 715, 716 (9th Cir. 2016) ....................................................................8

*Bey v. Daimler Chrysler Servs. of N. Am., LLC,*
  No. CIV. 04-6186 (RBK), 2006 WL 361385 (D.N.J. Feb. 15, 2006) ......................16

*Carman v. CBE Grp., Inc.,*
  782 F. Supp. 2d 1223 (D. Kan. 2011) .....................................................................16

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...............................................................................................18

*Chavious v. CBE Grp., Inc.,*
  No. 10-CV-1293 JS ARL, 2012 WL 113509 (E.D.N.Y. Jan. 13, 2012)........................16

*Crockett v. Rash Curtis & Assocs.,*
  929 F. Supp. 2d 1030 (N.D. Cal. 2013)..............................................................15, 17

*Gonzales v. Arrow Fin. Servs., LLC,*
  660 F.3d 1055 (9th Cir. 2011) ................................................................................18

*Gouskos v. Aptos Vill. Garage, Inc.,*
  94 Cal. App. 4th 754 (2001) ...................................................................................17

*Hernandez v. Rash Curtis & Associates,*
  No. 2:16-cv-02455-GHW (Nov. 16, 2017, E.D. Cal.) ..............................................9

*Hinderstein v. Advanced Call Ctr. Techs.,*
  No. CV 15-10017-DTB, 2017 WL 751420 (C.D. Cal. Feb. 27, 2017) .........................16

*Iniguez v. The CBE Grp.,*
  969 F. Supp. 2d 1241 (E.D. Cal. 2013) ...................................................................9

*Jiminez v. Accounts Receivable Mgmt., Inc.*,
    No. CV 09-9070-GWAJWX, 2010 WL 5829206 (C.D. Cal. Nov. 15, 2010) ...............................16

*Jones v. Rash Curtis & Assocs.*,
    No. C 10-00225 JSW, 2011 WL 2050195 (N.D. Cal. Jan. 3, 2011) ...........................................16

*Krapf v. Nationwide Credit Inc.*,
    No. SACV 09-00711 JVSMLG, 2010 WL 2025323 (C.D. Cal. May 21, 2010) ..........................16

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,
    No. 15-55777, 2017 WL 3613340 (9th Cir. Aug. 23, 2017)........................................................4

*Lynch v. Nelson Watson & Assocs., LLC*,
    No. 10-2025-EFM, 2011 WL 2472588 (D. Kan. June 21, 2011) .................................................16

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) ..................................................................................................10

*McBride v. Rash Curtis & Associates*,
    No. 2:16-cv-02390 (E.D. Cal. Mar. 22, 2018) ........................................................................2, 8

*McMillion v. Rash Curtis & Assocs.*,
    No. 16-CV-03396-YGR, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018) .....................................9, 11

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ......................................................................................................4

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ......................................................................................................................4

*Reyes v. BCA Fin. Servs., Inc.*,
    2018 WL 2220417 (S.D. Fla. May 14, 2018)..........................................................................5, 7, 8

*Saltzman v. I.C. Sys., Inc.*,
    No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) ...............................................16

*Schweitzer v. Comenity Bank*,
    866 F.3d 1273 (11th Cir. 2017) ..................................................................................................12

*Springer v. Fair Isaac Corp.*, No. 14-CV-02238-TLN-AC, 2015 WL 7188234, at *3 (E.D. Cal. Nov.
    16, 2015)......................................................................................................................................14

*Stirling v. Genpact Servs., LLC*, No. 2:11-CV-06369-JHN, 2012 WL 952310, at *4 (C.D. Cal. Mar.
    19, 2012)......................................................................................................................................15

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014) ..................................................................................................................4

*Tucker v. CBE Grp., Inc.*,
   710 F. Supp. 2d 1301 (M.D. Fla. 2010). ......................................................................16

*U.S. W. Commc'ns, Inc. v. Jennings,*
   304 F.3d 950 (9th Cir.  2002) ......................................................................................8

*Udell v. Kansas Counselors, Inc.*,
   313 F. Supp. 2d 1135 (D. Kan. 2004) ......................................................................16

*United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V.*
   *Samaniego, VL: $446,377.36*,
   835 F.3d 1159 (9th Cir. 2016) ....................................................................................3

*Vaccaro v. CVS Pharmacy, Inc.*,
   No. 13-CV-174-IEG RBB, 2013 WL 3776927 (S.D. Cal. July 16, 2013) ...................9

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ............................................................................4, 12

*VanHorn v. Genpact Servs., LLC*,
   No. 09-1047-CV-S-GAF, 2011 WL 4565477 (W.D. Mo. Feb. 14, 2011) ...................16

*Waite v. Fin. Recovery Servs., Inc.*,
   No. 8:09-CV-02336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010) ......................16

*Zetwick v. Cty. of Yolo*,
   850 F.3d 436 (9th Cir. 2017) ......................................................................................4

**STATUTES**

15 U.S.C. § 1692d ......................................................................................................15, 17

47 U.S.C. § 227 ................................................................................................................4

Cal. Civ. Code § 1788.11 ..........................................................................................17, 18

Cal. Civ. Code § 1788.17 ..............................................................................................18

Cal. Civ. Code § 1788.32 ..............................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..................................................................................................3, 18

**RULES**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   23 FCC Rcd. 559 (2008) ................................................................................................6

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   27 FCC Rcd. 15391 (2012) ................................................................6

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   18 FCC Rcd. 1,014 (2003) ................................................................5

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   30 F.C.C. Rcd. 7961 (July 10, 2015)................................................5

Plaintiff, Steven Oliver (hereafter "Plaintiff"), by undersigned counsel, respectfully opposes Defendant Rash Curtis Associate's ("Defendant" or "Rash Curtis") Motion for Summary Judgment or Partial Summary Judgment.

## STATEMENT OF THE FACTS

The relevant, undisputed facts are as follows.

The telephone number 530-XXX-0888 (the "0888 Number") at all relevant times was Plaintiff's cellular telephone. (Doc. No. 1 ("Compl.") ¶ 13).

On March 14, 2016, Marshall Medical transferred to Rash Curtis a medical debt incurred by non-party Karen Klein ("Ms. Klein") on August 12, 2015 (the "Debt"). (Keith Decl. ¶ 10). In connection with its transfer of the Debt to Rash Curtis, Marshall Medical also sent Rash Curtis a "Medical Emergency Outpatient Registration" form associated with the "Patient" Karen Klein's Debt, which was filled out on August 12, 2015. (Def. <u>Exhibit 3</u> (the "Klein Medical Emergency Form"); Keith Decl. ¶ 8). The Klein Medical Emergency Form includes the Patient's, i.e., Ms. Klein's telephone number as well as a "Guarantor's" telephone number. (Klein Medical Emergency Form). Neither the telephone number associated with Ms. Klein, nor the number associated with the Guarantor, is the 0888 Number. *Id.*

The Klein Medical Emergency Form also includes a section entitled "Nearest Relative Name/Address/Phone" which lists Plaintiff, Steven Oliver, and his 0888 Number. *Id.* It additionally includes a section entitled "Notify in Case of Emergency Name/Address/Phone" which lists Plaintiff, Steven Oliver and his 0888 Number. *Id.* The 0888 Number *only* appears on the Klein Medical Emergency Form as the telephone number associated with Plaintiff, who is only identified as Ms. Klein's nearest relative and the person to notify in case of an emergency. *Id.*

The Klein Medical Emergency Form does not (1) permit Marshall Medical's release of the nearest relative's contact information, or the person to contact in case of an emergency's contact information, to any other entities, including debt collectors, nor does it (2) permit any other entity, aside from Marshall Medical, to contact Ms. Klein's nearest relative, or the person to be contacted in case of emergencies, for any reason (financial, debt collection or otherwise). (Def. <u>Exhibit 3).</u>

1

Thereafter, between March 15, 2016 and April 29, 2016, Rash Curtis placed thirty-five (35) calls to the 0888 Number in an attempt to collect "a debt owed by Karen Klein." (Keith Decl. ¶¶ 11-13). Each of the thirty-five calls was placed with Defendant's Global Connect dialer. (Def.'s Response to Interrogatory No. 7[1] ("When a call is initiated via Global Connect, the date of the call is preceded by the letters 'GC'"); Def. Exhibit 6 ("Collection Notes") at RASH CURTIS 00011 (identifying eleven (11) calls to the 0888 Number with a "GC" preceding each call), RASH CURTIS 00012 (identifying twenty-one (21) calls to the 0888 Number with a "GC" preceding each call), RASH CURTIS 00013 (identifying three (3) calls to the 0888 Number with a "GC" preceding each call)).

Defendant admits that its Global Connect dialer, which was used to place each of the above calls, "dial[s] numbers from a list which Rash Curtis loads into the dialer" and that "Rash Curtis created a call list in Global Connect, which is how Global Connect was given the 08888 number." (Keith Decl. ¶ 20). It further admits that it uses "predictive dialing technology." *See McBride v. Rash Curtis & Associates,* No. 2:16-cv-02390 (E.D. Cal. Mar. 22, 2018) (ECF No. 12-1 at p.2). Beyond the loading of lists into the dialer, there is no evidence of any human intervention in making dialer calls with the Global Connect dialer.

The Global Connect dialer also uses prerecorded voices and/or messages. Defendant concedes that "Plaintiff might hear a prerecorded and/or artificial voice upon answering the call, or [a] prerecorded and/or artificial voice might have been left on Plaintiff's voicemail and/or answering machine where the collection notes indicate 'PHONE ANSWERD NO LINKBACK' or 'LMOM.'" (Def. Response to Interrogatory No. 8). The Collection Notes contain eleven (11) separate instances where Defendant called the 0888 Number with its Global Connect dialer and notated "PHONE ANSWERD NO LINKBACK," (Collection Notes at RASH CURTIS00011 (five (5) instances), RASH CURTIS00012 (six (6) instances)). The Collection Notes additionally contain one (1)

---

[1] A copy of Defendant's Responses to Plaintiff's First Set of Interrogatories are attached to the Kent Decl. as Exhibit A.

instance where the Defendant called the 0888 Number with its Global Connect dialer and notated "LMOM." (Collection Notes at RASH CURTIS00011).

The user manual associated with Defendant's Global Connect dialer confirms that it is a predictive dialer that can dial telephone numbers without human intervention, and can broadcast prerecorded and artificial messages. It describes the Global Connect as a cloud-based telephone dialer system which "broadcasts" prerecorded or artificial messages to telephone numbers. (Global Connect User Manual (Kent Decl., _Exhibit C_)[2] at RASHCURTIS0018, 00030, 00042, 00045, 00058, 00047, 00051, 00054, 00068-70). Global Connect requires users to "upload, creat[e], and stor[e]" "call lists" and "recorded messages" and then schedule, ahead of time, when Global Connect should broadcast those recorded messages to telephone numbers contained in the call list or to otherwise just dial. (_Id._ at RASHCURTIS0009).

## ARGUMENT

### I.   LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact.'" _United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36_, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "[S]ubstantive law will identify which facts are material" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986).

---

[2] In its response to Request for Production No. 5, Defendant responded that "Defendant will produce Global Connect's user manual. Please see exhibit C 'Global Connect User Manual." (Kent Decl. _Exhibit B_). However, the user manual is 77 pages but Defendant only produced 7 of those pages. (_See id._ at RASH CURTIS 00016 – 00023.) In another recent TCPA lawsuit, _Hernandez v. Rash Curtis & Associates,_ No. 2:16-cv-02455-GHW (E.D.C.A.), Defendant likewise produced a copy of the Global Connect user manual, but produced that manual in its entirety, a copy of which is available in that case's public docket at ECF No. 26-6, and attached to the Declaration of Trinette G. Kent as _Exhibit C_. (Kent Decl. ¶ 4; Kent. Decl. _Exhibit C_). Plaintiff relies on and cites to the full user manual attached as _Exhibit C_.

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "This . . . is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 249). Moreover, the court "must recognize that, where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal citations and quotation marks omitted). "In short, what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Id.* (internal citations and quotation marks omitted).

## II. <u>DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE TCPA CLAIMS</u>

Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). It "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). The TCPA prohibits any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or a prerecorded or artificial message; (3) without the recipient's prior express consent." *See Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, No. 15-55777, 2017 WL 3613340, at *6 (9th Cir. Aug. 23, 2017) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)); 47 U.S.C. § 227(b)(1)(A)(iii). Moreover, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten*, 847 F.3d at 1044.

## A. Predictive Dialer's are ATDS

Defendant argues that its self-described "predictive dialing technology," *see McBride* at ECF No. 12-1 at p. 2, which "dial[s] numbers which are loaded from a list," is not an ATDS because the dialer purportedly "does not have the capacity to generate random or sequential number and dial them . . . ." (Doc. No. 13-1 at 10). Defendant relies entirely on the D.C. Circuit's recent decision in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("*ACA International*"). Defendant contends *ACA International* "vacated the FCC's previous order [*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 FCC Ruling")], which had found that a predictive dialing telephone system constituted an 'ATDS' within the meaning of the TCPA." (Doc. No. 13-1 at 1). According to Defendant, "[t]he D.C. Circuit instead ruled that an 'ATDS' must have the ability to generate (that is, 'create') random or sequential numbers and dial those numbers," (Doc. No. 13-1 at 1-2) and therefore under *ACA International* its dialer, which "dial[s] numbers which are loaded from a list," (Doc. No. 13-1 at 10) is no longer an ATDS.

However, *ACA International* ruled no such thing and Defendant has completely misread its holding; predictive dialers are ATDS under FCC orders and rulings from 2003, 2008 & 2012, and such determinations were not overturned or changed by *ACA International*. *Reyes v. BCA Fin. Servs., Inc.*, 2018 WL 2220417, at *11-13 (S.D. Fla. May 14, 2018) ("[T]he Court finds that the prior FCC Orders are still binding. Therefore, the ACA International case does not change the Court's conclusion on the ATDS issue." & "In sum, the Court grants summary judgment in Reyes' favor on the ATDS issue, finding that the Noble predictive dialer, as used by BCA Financial, was an ATDS as a matter of law.").

In 2003 the FCC found "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 1,014, 14093 (2003). As the FCC explained:

The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation.

*Id.* at 14091 (internal citations omitted).

In 2008, the FCC issued a declaratory judgment that "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008). In 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

In 2015, the FCC issued the 2015 FCC Ruling which also addressed the ATDS issue and which was appealed in *ACA International*. The D.C. Circuit, in reviewing the FCC 2015 treatment of ATDS, identified two questions which arise from the TCPA's definition of ATDS[3]: "(i) when does a device have the 'capacity' to perform the two enumerated functions; and (ii) what precisely are those functions?" *ACA International*, 885 F.3d at 695.

On the first question, the 2015 FCC Ruling answered with a formulation of capacity which included its "'potential functionalities' or 'future possibility,' not just its 'present ability.'" The D.C. Circuit set aside this treatment. While the D.C. Circuit found that "capacity" necessarily includes some future functioning state and not present ability (*Id.* at 696 ("Virtually any understanding of 'capacity' thus contemplates some future functioning state, along with some modifying act to bring that state about."), the 2015 formulation had no reasoned limit and had "the apparent effect of

---

[3] "The term 'automatic telephone dialing system' means equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and **(B)** to dial such numbers." 47 U.S.C. § 227(a)(1).

embracing any and all smartphones" as they *could* download an app to enable autodialing even if no such download was made. *Id.* Because of this reach, the 2015 FCC Ruling's definition of capacity was "untenable." *Id*. at 689; *see Reyes*, 2018 WL 2220417 at *8.

On the second question (the functions), the D.C. Circuit found that the 2015 FCC Ruling's answer was at cross purposes with itself. The *Reyes* Court*:*

> After its review, the D.C. Circuit concluded that the 2015 FCC order "falls short of reasoned decisionmaking in 'offer[ing]' no meaningful guidance' to affected parties" because it chose differing, contrary interpretations or no interpretations at all as to ATDS functionality. *Id.* For instance, on the question of "whether a device must itself have the ability to generate random or sequential telephone numbers to be dialed" or can simply "call from a database of telephone numbers generated elsewhere," the FCC was "of two minds on the issue." *Id.* at 701.

> Specifically, the D.C. Circuit explained that "[w]hile the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer, it also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity." *Id.* at 702. On that issue, the FCC reaffirmed its 2003 order, in which it had "made clear that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *Id.* at 702.

> The D.C. Circuit did not reject one view or the other. Rather, it recognized that *either* interpretation might be permissible but disapproved the FCC's Janus-like approach.

*Reyes*, 2018 WL 2220417 at *9.

It was that conflicting stance in the 2015 Ruling which made <u>it</u>, that specific ruling, fail to satisfy reasoned decision making. But *ACA International* did not reach back and say that prior orders suffered the same defect. Again, the *Reyes* Court:

> [W]hat *ACA International* did was to reject the FCC's have-your-cake-and-eat-it-too approach to the questions before it. The FCC was of "two minds on the issue" of whether "a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer," or whether "that equipment can meet the statutory definition even if it lacks that capacity." *Id.* at 701–02. The FCC answered "yes" and "yes," i.e., it *must have* that ability and it *may lack* that ability, two conflicting answers that the D.C. Circuit could not accept because it provided no meaningful guidance.

> But what *ACA International* did not do is endorse one interpretation over the other, even implicitly. *ACA International* did not say that a predictive dialer, or any other type of device, must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer. Nor did it say that a predictive dialer, or any other type of device, may lack that capacity. In fact, the D.C. Circuit said that "[i]t might be permissible for the Commission to adopt either interpretation." *ACA Int'l*, 885 F.3d at 703 (emphasis added). But what the FCC could not do was "espouse both competing interpretations in the same order." *Id.*

*Id.* at *12.

Here, as in *Reyes*, Defendant is "essentially urging the Court to adopt the first interpretation—i.e., that a predictive dialer must be able to generate and dial random or sequential numbers to be an ATDS—based on *ACA International's* authority. But *ACA International* does not compel that conclusion because it did not adopt that interpretation." *Id.* Indeed, *ACA International* did not adopt any interpretation of the required capacities.

This Court cannot do as Defendant asks. Under the Hobbs Act, "properly promulgated FCC regulations currently in effect must be presumed valid." *U.S. W. Commc'ns, Inc. v. Jennings,* 304 F.3d 950, 958 n. 2 (9th Cir. 2002); *Baird v. Sabre, Inc.*, 636 F. App'x 715, 716 (9th Cir. 2016). While the 2015 Ruling was set aside, the 2003 FCC Order was not. Indeed, while the 2015 Ruling failed because it identified conflicting functions, "in the 2003 order, the Commission had made clear that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *ACA International*, 885 F.3d at 702. That 2003 Order is a properly promulgated FCC regulation, was not struck by *ACA International* and is binding under the Hobbs Act.

## B. Defendant's Predictive Dialer is an ATDS

It is undisputed that Defendant's Global Connect is a predictive dialer. Defendant's Vice President declared that Rash Curtis's Global Connect dialer "dial[s] numbers from a list which Rash Curtis loads into the dialer." (Keith Decl. ¶ 20). And in the *McBride* case currently pending before this Court, Defendant admitted it uses "predictive dialing technology." *See McBride* at ECF No. 12-1 at p. 2. Beyond the loading of lists into the dialer, there is no evidence of any human intervention

in making dialer calls with the Global Connect dialer.  Just three months ago, in a class action TCPA lawsuit against Rash Curtis in the Northern District of California, Rash Curtis's Global Connect dialer was found to be an ATDS as a matter of law. *See McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2018 WL 692105, at *5 (N.D. Cal. Feb. 2, 2018) ("the Court holds that Rash Curtis' Dialers constitute ATDSs within the meaning of the TCPA."); *see also Hernandez v. Rash Curtis & Associates,* No. 2:16-cv-02455-GHW (Nov. 16, 2017, E.D.C.A.) (ECF No. 35) (entering summary judgment against Rash Curtis and in the plaintiff's favor regarding  plaintiff's TCPA claim for treble damages; in that case, as here, Rash Curtis used the same Global Connect dialer.). Thus, Defendant's request for summary judgment on the ATDS issue is without merit.

Further, Defendant's evidence indicate that on twelve (12) separate instances, Defendant placed a call to 0888 Number with a prerecorded and/or artificial voice. (Def. Response to Interrogatory Nos. 8 & 23; Collection Notes at RASH CURTIS 00011-00013)).  For each of those calls, whether or not Defendant's dialer qualifies as an ATDS is irrelevant, because Plaintiff need only prove that Defendant used an artificial or prerecorded voice *or* an ATDS, not both. *See Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) ("Plaintiff's complaint alleges both that Defendant used an automatic telephone dialing system and that Defendant's system utilized an artificial voice. . . . Either allegation is sufficient on its own to support Plaintiff's claims."); *Vaccaro v. CVS Pharmacy, Inc.*, No. 13-CV-174-IEG RBB, 2013 WL 3776927, at *3 (S.D. Cal. July 16, 2013) ("Alleging the use of either an ATDS or an artificial or prerecorded voice would suffice; here, Plaintiff adequately pleads both.").

## C. Defendant Lacked Prior Express Consent to Call Plaintiff

Defendant moves for summary judgment on its affirmative defense of prior express consent to TCPA liability.  It argues that it had prior express consent to place automated debt collection calls to Plaintiff regarding another individual's debt, via (1) the Klein Medical Emergency Form, which lists the 0888 Number as Plaintiff's number in the context of describing Plaintiff as Ms. Klein's nearest relative and the person to notify in case of emergency and (2) the Oliver Medical Emergency Form, which pertained to a separate medical procedure Plaintiff underwent, and which is completely

unrelated to the sole debt which Rash Curtis sought to collect from Ms. Klein. Neither form provided Rash Curtis with prior express consent to place repeated automated debt collection calls to Plaintiff's cellular telephone in an attempt to reach someone else about a debt not owed by Plaintiff.

### i. The Klein Emergency Medical Form did not provide prior express consent

Rash Curtis contends that "'prior express consent' to call a phone number may be given by an intermediary, on behalf of the called party" and therefore "Mr. Oliver's grandmother, Ms. Klein, validly gave consent to call the 0888 number when she provided it to Marshall Medical in connection with her medical treatment that resulted in the debt that Rush Curtis was attempting to collect." (Doc. No. 13-1 at 3) (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119-24 (11th Cir. 2014)). This argument – and Rash Curtis's reliance on *Mais* – fails, because Rash Curtis does not submit any evidence showing that (1) Plaintiff authorized his grandmother to provide his number on his behalf or (2) that when the number was provided, his grandmother was informed that by listing Plaintiff as an emergency contact and her nearest relative and providing Plaintiff's number in that capacity, she agreed that the hospital could release his telephone number to other entities for any purpose pertaining to payment of Ms. Klein's debt.

In *Mais,* the *plaintiff* underwent emergency room treatment at a hospital, and his wife, on behalf of the plaintiff, "completed and signed admissions documents, which she gave to a Hospital representative" and which "expressly agreed that 'the hospital and the physicians or other health professionals involved in the inpatient or outpatient care [may] release [Plaintiff's] healthcare information for purposes of treatment, *payment* or healthcare operations,' including 'to any person or entity liable for payment on the patient's behalf in order to *verify coverage or payment questions, or for any other purpose related to benefit payment*.'" *Mais*, 768 F.3d at 1113–14 (emphasis added). The hospital thereafter transferred an unpaid medical bill arising out of the plaintiff's treatment, to a third-party debt collector, which then called the plaintiff's cellular telephone to collect the plaintiff's debt from the plaintiff. *Id.,* 768 F.3d at 1114. Those calls formed the basis of the TCPA case. The court noted that whether prior express consent exists "turns on whether the called party granted permission or authorization, not on whether the creditor received the number directly," and was able

to conclude that in that case, because the husband expressly authorized his wife to provide his number on his behalf, and because the wife was informed that by providing the number, she agreed that the number could be released to other entities for payment issues, consent to call that number for debt collection existed. *Id.,* 768 F.3d at 1123-24. Thus, in *Mais,* the court based prior express consent to call the plaintiff regarding the plaintiff's debt on the fact that the plaintiff (1) authorized his wife to provide his cell phone number to the hospital; (2) agreed that the hospital could give the cell phone number to any entity for payment purposes; and (3) the calls at issue were attempts to collect the plaintiff's debt directly from the plaintiff.

However, unlike in *Mais,* Rash Curtis does not submit any evidence showing that Plaintiff authorized Ms. Klein to provide his cellular telephone number to Marshall Medical on his behalf. On this point, Rash Curtis asserts that because "they lived together as recently as 2013" and "they have both represented to Marshall Medical that they are each other's nearest relative and contact" that "Ms. Klein had authority to give that consent." (Doc. No. 13-1). This argument is meritless. Plaintiff does not, by mere virtue of being Ms. Klein's grandson, give Ms. Klein authority to act on his behalf. Nor does the fact that they lived together in 2013 give Ms. Klein authority to act on his behalf two years later, in 2015. Rash Curtis does not provide any evidence actually showing authorization from Plaintiff, and does not provide any caselaw supporting its position.

Second, unlike in *Mais,* where the relevant form advised that by providing a number, the wife agreed that the hospital could release the plaintiff's number to other entities for payment purposes, there is no such language on the Klein Emergency Medical Form. (Def. Exhibit 4). That form does not contemplate the use of that contact information by any third parties for any reason. *Id.* Indeed, the form makes clear that Plaintiff's contact information is for emergencies. *Id.* Moreover, every call that Rash Curtis placed to Plaintiff was regarding Ms. Klein's debt, not Plaintiff's debt, whereas in *Mais* every call to the plaintiff was an attempt to collect plaintiff's debt from the plaintiff.

Notably, in other cases Rash Curtis has already attempted – and failed – to argue that a third party's provision of the plaintiff's number to a hospital regarding the third-party's debt, constituted prior express consent to call the plaintiff. *See McMillion*, 2018 WL 692105, at *8 (holding Rash

Curtis lacked prior express consent to call plaintiff where it was "undisputed that defendant did not call [plaintiff] 'in connection with a particular debt' owned by [plaintiff]. Rather, the calls were in connection with a debt apparently owed by non-party Reynoso." In so holding, court rejected Rash Curtis's argument that non-party's voluntarily provision of plaintiff's cell phone to hospital constituted prior express consent to call that number "regardless of the account holder."). The reasoning in *McMillion* is equally applicable here.

In short, Rash Curtis has failed to show that it had prior express consent to place automated debt collection calls to Plaintiff regarding Ms. Klein's debt because Plaintiff was listed as an emergency contact on the Klein Emergency Medical Form.

### ii. The Oliver Emergency Medical Form did not provide prior express consent

Nor can Rash Curtis show it had prior express consent to place debt collection calls to Plaintiff's cellular telephone about *Ms. Klein's debt* via the Oliver Emergency Medical Form. Indeed, that form was regarding a medical procedure Plaintiff underwent two years before Ms. Klein's August 12, 2015 procedure, and has absolutely nothing to do with Rash Curtis's attempt to collect Ms. Klein's separate debt, arising from a separate medical procedure, from Ms. Klein.

"[T]he FCC has established no rule that a consumer who gives a phone number to a company has consented to be contacted for any reason." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017). Instead, determining the "scope of a consumer's consent to contact" requires a review of the "the transactional context" surrounding the purported consent. *Id*; *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1277 (11th Cir. 2017) ("the TCPA allows a consumer to provide limited, i.e., restricted, consent for the receipt of automated calls."). Thus, in *Van Patten*, the Ninth Circuit set forth that "Van Patten giving his phone number for the purpose of his gym membership agreement did not amount to consent to be contacted for all purposes." *Van Patten*, 847 F.3d at 1046. It explained that:

> Under the logic of the FCC's orders, Van Patten gave his consent to being contacted about some things, such as follow-up questions about his gym membership application, but not to all communications. The scope of his consent included the text messages' invitation to "come back" and reactivate his gym membership. The text messages at issue here were part of a campaign to get former and inactive gym

members to return, and thus related to the reason Van Patten gave his number in the first place, to apply for a gym membership.

*Id.*

*Van Patten* compels denial of Defendant's motion because Rash Curtis's calls to the 0888 Number, which were solely to collect a debt owed by Ms. Klein *from Ms. Klein*, were completely unrelated to the reason that Plaintiff gave his number to Marshall Medical on March 13, 2013, i.e., in connection with Plaintiff's separate medical treatment for himself.

Tellingly, Rash Curtis does not explain precisely how or why the Oliver Emergency Medical Form gave it consent to call Plaintiff regarding a debt that it does not contend Plaintiff owes and which is unrelated to the medical procedure at issue in the Oliver Emergency Medical Form. At most, it asserts that "the 'prior express consent' to call the 0888 number was first provided by Mr. Oliver to the medical provider on whose behalf Rash Curtis was calling . . . ." (Doc. No. 13-1 at 3). By Rash Curtis's logic, if anyone incurs a medical debt to a hospital, and that debt is then transferred to Rash Curtis for collection, Rash Curtis has consent to not only call that person to collect *their* medical debt, but additionally has permission to call that person regarding *any other* medical debt originating from that hospital, no matter who is obligated to pay it. That is an absurd result, yet that is precisely what Rash Curtis argues in its motion for summary judgment.

### iii. Rash Curtis was not acting with good faith

Perhaps acknowledging that the evidence it submits does not show it had prior express consent from Plaintiff to call him about Ms. Klein's debt, Rash Curtis argues that it was acting with the good faith belief that it had prior express consent to call Plaintiff, and therefore should not face TCPA liability. (Doc. No. 13-1 at 12). However, there was absolutely no reason for Rash Curtis to have believed that it had prior express consent to call Plaintiff regarding Ms. Klein's debts. The Klein Medical Emergency Form clearly listed Plaintiff as Ms. Klein's nearest relative and the individual to contact in case of emergencies. That form did not indicate he was an individual to contact regarding payment of Ms. Klein's medical bills. In fact, that form did not provide third parties permission to contact him for *any purpose.* Nor can Rash Curtis claim, in good faith or

otherwise, that it thought it had consent to call Plaintiff regarding Ms. Klein's medical debt from the separate form he submitted in connection with his own medical treatment two years prior.

In the *Springer* case the defendant cites to, the defendant's "good faith defense [wa]s based on its assertion that there was prior express consent," and thus the court denied the defendant's motion to strike the defendant's prior express consent good faith defense. *Springer v. Fair Isaac Corp.*, No. 14-CV-02238-TLN-AC, 2015 WL 7188234, at *3 (E.D. Cal. Nov. 16, 2015). However, the court noted that its "ruling is not to be read as permitting a general good faith defense under the TCPA. Defendant's defense is only permitted in so far as Defendant intends to argue that it had a good faith belief that prior express consent existed." *Id.* "As always," it emphasized, "Defendant bears the burden of proof and must produce sufficient facts showing Plaintiff's prior express consent to be contacted." *Id.* ("If discovery doesn't support this affirmative defense, the Court is receptive to a subsequent motion."). Here, the evidence does *not* show that Defendant had prior express consent, or that it had a good faith belief that it did have consent.

Nor can Rash Curtis rely on the holding in *ACA Interntional* regarding the 2015 FCC Ruling's one-call safe harbor for instances where the caller did not reach its intended recipient because a cellular telephone number was reassigned. *See ACA Int'l*, 885 F.3d at 704–09. Aside from the fact that D.C. Circuit set aside the one-call safe harbor as arbitrary, *leaving no safe harbor in its place,* the present case does not involve a situation where the number Rash Curtis was calling was reassigned unbeknownst to Rash Curtis. Rash Curtis readily admits it meant to call Plaintiff at the 0888 Number; it just asserts that, for some reason, it though had consent to do so. As discussed, its belief was not in good faith, and because it did not have Plaintiff's prior express consent, its motion for summary judgment regarding prior express consent should be denied.

### D. Rash Curtis is Not Entitled to Summary Judgment on the Issue of Treble Damages

Rash Curtis argues that it is entitled to summary judgment regarding whether its violations of the TCPA were knowing and willful, because it purportedly "did not actually know that it was acting without consent." (Doc. No. 13-1 at 13). To the contrary, a cursory review of the materials it claims provided consent – the Klein Emergency Medical Form and the Oliver Emergency Medical Form –

would notify any rational actor that they did not have consent to place debt collection calls to Plaintiff's cellular telephone regarding another person's medical debt. Indeed, Rash Curtis never claims that it mistakenly thought that number belonged to Ms. Klein; it acknowledges it was attempting to call Plaintiff but thought it nevertheless had consent to call him. And Rash Curtis did not merely call him a handful of times. It decided to call him thirty-five (35) separate times over the course of six weeks. Taken together, there are at the very least triable issues of fact regarding whether Rash Curtis's violations of the TCPA were knowing and willful.

## III. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE FDCPA CLAIMS

The FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," which encompasses "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). "Numerous courts throughout the nation have held that the intent to annoy, abuse, or harass may be inferred from the nature, pattern, and frequency of debt collection calls." *Stirling v. Genpact Servs., LLC*, No. 2:11-CV-06369-JHN, 2012 WL 952310, at *4 (C.D. Cal. Mar. 19, 2012).

The undisputed evidence shows that Defendant placed thirty-five separate telephone calls to Plaintiff's cellular telephone over the course of six weeks. (Collection Notes at RASH CURTIS 00011-13); Keith Decl. ¶ 13). But it did not call a *debtor* that often; it called a third-party, whom it knew was a third-party, regarding *someone else's* debt on thirty-five (35) separate occasions. Defendant's complete disregard for whether it had the right to call Plaintiff – and its decision to continue to call Plaintiff relentlessly despite not reaching Ms. Klein – evidences an intent to harass Plaintiff. *See Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1033 (N.D. Cal. 2013) ("Rash Curtis's 22 calls to plaintiff raise a plausible inference of intent to harass in violation of Subsection 1692d(5).").

Moreover, the cases Rash Curtis relies on in support of its request for summary judgment are inapposite. For instance, in *Tucker v. CBE Grp., Inc.*, the court found that the debt collector was

attempting to reach the debtor but inadvertently called the third party-plaintiff. *Tucker v. CBE Grp., Inc.*,710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010). Likewise, in *Chavious v. CBE Grp., Inc.*, the debt collector "repeatedly called a phone number that it mistakenly believed belonged to an unnamed debtor." *Chavious v. CBE Grp., Inc.*, No. 10-CV-1293 JS ARL, 2012 WL 113509, at *1 (E.D.N.Y. Jan. 13, 2012). By contrast, there was no mistake here: Rash Curtis was aware at all times that it was calling *Plaintiff's* number, not Ms. Klein's number, and thus had an intent to call the Plaintiff, not the debtor. *See* Klen Decl. 13 (noting that Rash Curtis "placed 35 calls to the number ending in 0888 which had been provided . . . as the phone number of [Ms. Klein's] nearest relative, Steven Oliver, as well as previously by Mr. Oliver himself.").

Moreover, the remaining cases Rash Curtis cites all involve situations where the calls at issue were placed to the *debtor* in an attempt to collect a debt from the debtor, rather than the situation here, where Rash Curtis knowingly placed near daily calls to Plaintiff regarding someone else's debt. *See Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (calls were to debtor); *Hinderstein v. Advanced Call Ctr. Techs.*, No. CV 15-10017-DTB, 2017 WL 751420, at *2 (C.D. Cal. Feb. 27, 2017) (same); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1227 (D. Kan. 2011) (same); *Jones v. Rash Curtis & Assocs.*, No. C 10-00225 JSW, 2011 WL 2050195, at *1 (N.D. Cal. Jan. 3, 2011) (same); *Lynch v. Nelson Watson & Assocs., LLC*, No. 10-2025-EFM, 2011 WL 2472588, at *1 (D. Kan. June 21, 2011) (same); *Waite v. Fin. Recovery Servs., Inc.*, No. 8:09-CV-02336, 2010 WL 5209350, at *1 (M.D. Fla. Dec. 16, 2010) (same); *Jiminez v. Accounts Receivable Mgmt., Inc.*, No. CV 09-9070-GWAJWX, 2010 WL 5829206, at *1 (C.D. Cal. Nov. 15, 2010) (same); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (same); *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1136 (D. Kan. 2004) (same); *VanHorn v. Genpact Servs., LLC*, No. 09-1047-CV-S-GAF, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (same); *Bey v. Daimler Chrysler Servs. of N. Am., LLC*, No. CIV. 04-6186 (RBK), 2006 WL 361385, at *1 (D.N.J. Feb. 15, 2006) (same); *Krapf v. Nationwide Credit Inc.*, No. SACV 09-00711 JVSMLG, 2010 WL 2025323, at *1 (C.D. Cal. May 21, 2010) (same).

In light of the undisputed evidence in the record showing that Rash Curtis knowingly placed thirty-five (35) calls to non-debtor Plaintiff regarding a debt he was not obligated to pay, there are triable issues of fact regarding whether Rash Curtis violated section 1692d of the FDCPA, precluding an entry of summary judgment in Defendant's favor.

## IV. **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE ROSENTHAL ACT CLAIMS**

### A. **Plaintiff has Standing**

Plaintiff has standing to pursue his Rosenthal Act claims. Defendant argues that it was not attempting to collect a debt that arose out of a "consumer credit transaction" because "Karen Klein simply failed to pay her medical bills." (Doc. No. 13-1 at 17). In support, Rash Curtis cites only to *Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754 (2001), in which that court held that section 1788.2(e) "states that a consumer credit transaction means a transaction where a person *acquires* property or services *on credit.* In other words, there is a consumer credit transaction when the consumer acquires something without paying for it." *Id.,* 94 Cal. App. 4th at 759. On the facts at issue there, the Gousko court "venture[d] that in the automobile repair context there rarely would exist a consumer credit transaction because repair shops typically do not release repaired vehicles without payment; thus a vehicle owner would typically not acquire a shop's property or service until the property or service is paid for and he or she regains his or her own property." *Id.,* 94 Cal. App. 4th at 760. By contrast, here Defendant readily admits that third-party Ms. Klein obtained medical services *without paying for them.* (Doc. No. 13-1 at 17). Thus, under *Gouskos,* the unpaid medical bills *are* consumer credit transactions. Rash Curtis's argument that Plaintiff lacks standing is meritless.

### B. **Defendant Violated Cal. Civ. Code § 1788.11(d)**

Cal. Civ. Code § 1788.11(d), much like 15 U.S.C. § 1692d(5), prohibits "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called." For the same reasons set forth above showing that Defendant violated 15 U.S.C. § 1692d(5), Defendant also violated Cal. Civ. Code § 1788.11(d). *See Crockett*, 929 F. Supp. 2d at 1033 ("Claims under Section 1788.11(d) of the Rosenthal Act require the same proof of intent and are evaluated for specificity in the same

way as claims under Subsection 1692d(5) of the FDCPA.").

### C. Defendant Violated Cal. Civ. Code § 1788.17

Defendant asserts it is entitled to summary judgment on Plaintiff's §1788.17 claim because, according to Defendant, it is also entitled summary judgment for Plaintiff's FDCPA claims. To the contrary, in light of Defendant's FDCPA violations, it also violated Cal. Civ. Code § 1788.17. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1067 (9th Cir. 2011) ("the Rosenthal Act does not limit recovery simply because it is also available under federal law. The Rosenthal Act specifically provides that its remedies are intended to be 'cumulative and . . . in addition to any other . . . remedies under any other provision of law.'") (quoting Cal. Civ. Code § 1788.32).

## V. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT REGARDING ACTUAL DAMAGES

Defendant does not cite to any evidence in support of its request for summary judgment regarding Plaintiff's actual damages. (Doc. No. 13-1 at 18-19). Instead, it asserts in a conclusory sentence that "[b]ecause Mr. Oliver has failed to show any actual harm caused to him as a result of Rash Curtis' alleged conduct, Rash Curtis is entitled to partial summary judgment on this issue." (Doc. No. 13-1 at 19). But it is *Rash Curtis* that moved for summary judgment. Thus, it is *Rash Curtis* that "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). Rash Curtis, who failed to conduct any discovery in this case, has likewise failed to satisfy its initial burden of supporting its request for summary judgment with evidence demonstrating there are no issues of material fact.

Further, Rash Curtis's arguments that "[t]he mere fact a debtor subjectively wishes he or she was not in debt collection, or the calls (during normal business hours) are inconvenient or embarrassing, does not, without more, create a violation," (Doc. No. 13-1 at 19) is completely irrelevant, because *Plaintiff is not a debtor* and *objectively* should not have been the subject of debt collection regarding someone else's debt. Rash Curtis fails to explain why a stranger should not be

frustrated or annoyed or otherwise bothered by receiving calls regarding someone else's debt.

Based on the foregoing, Rash Curtis is not entitled to summary judgment on this the issue of actual damages.

### <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment.

DATED: May 17, 2018                    TRINETTE G. KENT

By:    <u>/s/   *Trinette G. Kent*</u>
Trinette G. Kent, Esq.
Lemberg Law, LLC
Attorney for Plaintiff, Steven Oliver

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2018, a true and correct copy of the foregoing was served electronically by the United States District Court for the Eastern District of California Electronic Document Filing System (ECF) and that the document is available on the ECF system.

*/s/ Trinette G. Kent*
Trinette G. Kent